```
                    IN THE UNITED STATES DISTRICT COURT
                  FOR THE WESTERN DISTRICT OF TENNESSEE
                             WESTERN DIVISION
```
_____

MABLE JEAN LONGMIRE,

    Petitioner,

vs.                                    No. 05-2521-JDB/dkv

REUBEN HODGE,

    Respondent.

_____

```
            ORDER GRANTING RESPONDENT'S MOTION TO DISMISS
                         ORDER OF DISMISSAL
              ORDER DENYING CERTIFICATE OF APPEALABILITY
                                AND
              ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
```
_____

On July 21, 2005, Petitioner, Mable Jean Longmire, Tennessee Department of Corrections (TDOC) inmate number 310631, an inmate at the Mark Luttrell Correctional Center (MLCC), in Memphis, Tennessee, filed a petition under 28 U.S.C. § 2254. On April 13, 2007, the Court ordered Respondent to file a response to the petition. On June 6, 2007, Respondent filed a motion to dismiss the petition.

I.   <u>UNDERLYING FACTS AND STATE COURT PROCEDURAL HISTORY</u>

On August 12, 1999, Longmire was convicted by a Shelby County jury of first degree murder and was subsequently sentenced to life in prison. Petitioner appealed challenging the sufficiency of the evidence. Her conviction was affirmed on appeal by the

Tennessee Court of Criminal Appeals on February 15, 2001. <u>State v.</u>
<u>Longmire</u>, No. W1999-00216-CCA-R3-CD, 2001 WL 128561 (Tenn. Crim.
App. Feb. 25, 2001)(<u>perm. app. denied</u>, June 4, 2001).

On November 6, 2001, Longmire filed a petition for post-
conviction relief contending her lawyers were ineffective. After
an evidentiary hearing, the Shelby County Criminal Court judge
denied the petition on May 15, 2003. (Respondent's Addendum 8, pp.
8-12, 17-18 ). The Tennessee Court of Criminal Appeals affirmed
the lower court's action on July 20, 2004. <u>Longmire v. State</u>, No.
W2003-01566-CCA-R3-PC (Tenn. Crim. App. July 20, 2004).
(Respondent's Addendum 10). The Tennessee Supreme Court denied
Petitioner's application for permission to appeal on December 28,
2004. (Respondent's Addendum 11).

The underlying facts for the inmate's conviction are as
follows:

> The Defendant learned that her husband was having an
> affair with the victim. She went to New Orleans to visit
> a friend and contemplate her situation. While in New
> Orleans, she went on a drinking binge. After several
> days, she drove home to Memphis, stopping at a cousin's
> home on the way. The Defendant took a pistol from her
> cousin's house before leaving. Eventually, the Defendant
> drove to the victim's house and waited for the victim to
> return. The State's proof at trial established that,
> after shooting the victim initially, the Defendant walked
> away. The victim cried out for help, and the Defendant
> returned to the victim's location. The Defendant then
> shot the victim several more times, killing her.

<u>Longmire v. State</u>, W2003-01566-CCA-R3-PC (Tenn. Crim. App. July 20,
2004). (Respondent's Addendum 10).

II. PETITIONER'S FEDERAL HABEAS CLAIMS

LONGMIRE ASSERTS THE FOLLOWING AS BASES FOR HER § 2254 PETITION:

1.      The evidence was insufficient to sustain a verdict of guilty under the standard enunciated in Jackson v. Virginia, 443 U.S. 307 (1979); and

2.      She was denied the effective assistance of trial counsel due to counsel's failure to:

    A.      adequately investigate the case;
    B.      raise the critical issues at trial;
    C.      call witnesses on Longmire's behalf;
    D.      adequately meet with Longmire;
    E.      oppose prosecution witnesses;
    F.      move for further psychiatric evaluation; and
    G.      inform Longmire of her right not to talk with psychiatric professionals about her crime.

III. MOTION TO DISMISS

Respondent contends that Petitioner fails to show any unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

IV. LEGAL STANDARDS APPLICABLE TO HABEAS PETITIONS

A.      Merits Review

The standard for reviewing a habeas petitioner's constitutional claims on the merits is stated in 28 U.S.C. § 2254(d). That section provides as follows:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the
Supreme Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of
the evidence presented in the State court
proceeding.

This Court must determine whether the state court adjudications of

the claims that were decided on the merits were either "contrary

to" or an "unreasonable application of" "clearly established"

federal law as determined by the United States Supreme Court.  This

Court must also determine whether the state court decision with

respect to each issue was based on an unreasonable determination of

the facts in light of the evidence presented in the state

proceeding.

    1.   <u>§ 2254(d)(1)</u>

The United States Supreme Court has issued a series of

decisions setting forth the standards for applying § 2254(d)(1).[1]

In <u>(Terry) Williams v. Taylor</u>, 529 U.S. 362, 404 (2000), the

Supreme Court emphasized that the "contrary to" and "unreasonable

application of" clauses should be accorded independent meaning.  A

state-court decision may be found to violate the "contrary to"

clause under two circumstances:

A state-court decision will certainly be contrary to our
clearly established precedent if the state court applies
a rule that contradicts the governing law set forth in
our cases. . . .  A state-court decision will also be
contrary to this Court's clearly established precedent if

---

[1]     By contrast, there is a dearth of caselaw concerning the standards
for applying § 2254(d)(2).

4

> the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent. Accordingly, in either of these two scenarios, a federal court will be unconstrained by § 2254(d)(1) because the state-court decision falls within that provision's "contrary to" clause.

Id. at 405-06 (citations omitted); see also Price v. Vincent, 538 U.S. 634, 640 (2003); Lockyer v. Andrade, 538 U.S. 63, 73 (2003); Bell v. Cone, 535 U.S. 685, 694 (2002).[2] The Supreme Court has emphasized the narrow scope of the "contrary to" clause, explaining that "a run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams, 529 U.S. at 406; see also id. at 407 ("If a federal habeas court can, under the 'contrary to' clause, issue the writ whenever it concludes that the state court's application of clearly established federal law was incorrect, the 'unreasonable application' test becomes a nullity.").

A federal court may grant the writ under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case." Cone, 535 U.S. at 694; see also Andrade, 538 U.S. at 75; Williams,

---

[2] The Supreme Court has emphasized that this standard "does not require citation of our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam) (emphasis in original).

529 U.S. at 409.[3] "[A]n unreasonable application of federal law is different from an incorrect application of federal law." <u>Williams</u>, 529 U.S. at 410.[4] "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Id.</u> at 409.[5]

Section 2254(d)(1) refers to "clearly established" federal law, "as determined by the Supreme Court of the United States."

---

[3] Although the Supreme Court in <u>Williams</u> recognized, in dicta, the possibility that a state-court decision could be found to violate the "unreasonable application" clause when "the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," 529 U.S. at 407, the Supreme Court expressed a concern that "the classification does have some problems of precision," <u>id.</u> at 408. The <u>Williams</u> Court concluded that it was not necessary "to decide how such 'extension of legal principle' cases should be treated under § 2254(d)(1)," <u>id.</u> at 408-09, and, to date, the Supreme Court has not had occasion to revisit the issue. <u>See</u> <u>Williams v. Coyle</u>, 260 F.3d 684, 699-700 (6th Cir. 2001), <u>cert. denied</u>, 536 U.S. 947 (2002).

[4] <u>See also</u> <u>Andrade</u>, 538 U.S. at 75 (lower court erred by equating "objectively unreasonable" with "clear error"; "These two standards, however, are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); <u>Woodford v. Visciotti</u>, 537 U.S. 19, 25 (2002) (per curiam)(holding that the lower court "did not observe this distinction [between an incorrect and an unreasonable application of federal law], but ultimately substituted its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d).");
<u>Cone</u>, 535 U.S. at 698-99 ("For [a habeas petitioner] to succeed . . . , he must do more than show that he would have satisfied <u>Strickland</u>'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly.");
<u>Williams</u>, 529 U.S. at 411 ("Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.").

[5] <u>See also</u> <u>Brown v. Payton</u>, 125 S. Ct. 1432, 1442 (2005)("Even were we to assume the '"relevant state-court decision applied clearly established federal law erroneously or incorrectly,"' . . . there is no basis for further concluding that the application of our precedents was 'objectively unreasonable.'")(citations omitted).

This provision "expressly limits the source of law to cases decided by the United States Supreme Court." Harris v. Stovall, 212 F.3d 940, 944 (6th Cir. 2000). As the Sixth Circuit explained:

> This provision marks a significant change from the previous language by referring only to law determined by the Supreme Court. A district court or court of appeals no longer can look to lower federal court decisions in deciding whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.

Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1999)(citing 17A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4261.1 (2d ed. Supp. 1998)); see also Harris, 212 F.3d at 944 ("It was error for the district court to rely on authority other than that of the Supreme Court of the United States in its analysis under § 2254(d)."). Finally, in determining whether a rule is "clearly established," a habeas court is entitled to rely on "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412.

  2.  § 2254(d)(2)

Few cases address the standards for applying § 2254(d)(2), which permits federal courts to grant writs of habeas corpus where the state court's adjudication of a petitioner's claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." In a decision applying this standard, the Supreme Court observed that § 2254(d)(2) must be read in conjunction with

28 U.S.C. § 2254(e)(1), which provides that a state court's factual determinations are presumed to be correct unless rebutted by clear and convincing evidence. <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240, 125 S. Ct. 2317, 2325 (2005).[6] It appears that the Supreme Court has, in effect, incorporated the standards applicable to the "unreasonable application" prong of § 2254(d)(1). <u>Rice v. Collins</u>, 546 U.S. 333, 341-42, 126 S. Ct. 969, 976 (2006)("Reasonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination."). That is consistent with the approach taken by the Sixth Circuit, which stated, in an unpublished decision, that

> a federal habeas court may not grant habeas relief under § 2254(d)(2) simply because the court disagrees with a state trial court's factual determination. Such relief may only be granted if the state court's factual determination was "objectively unreasonable" in light of the evidence presented in the state court proceedings. Moreover . . . , the state court's factual determinations are entitled to a presumption of correctness, which is rebuttable only by clear and convincing evidence.

<u>Young v. Hofbauer</u>, 52 Fed. Appx. 234, 236 (6th Cir. Dec. 2, 2002) (citing 28 U.S.C. § 2254(e)(1));[7] <u>see also</u> <u>Stanley v. Lazaroff</u>, 01-4340, 2003 WL 22290187, at *9 (6th Cir. Oct. 3, 2003); <u>Jackson v. Holland</u>, No. 01-5720, 2003 WL 22000285, at *7 (6th Cir. Aug. 21,

---

[6]     <u>But cf.</u> <u>Rice v. Collins</u>, 546 U.S. 333, 338-39,126 S. Ct. 969, 974 (2006)(recognizing that it is unsettled whether there are some factual disputes where § 2254(e)(1) is inapplicable).

[7]     <u>See also</u> <u>Sumner v. Mata</u>, 449 U.S. 539, 546-47 (1981)(applying presumption of correctness to factual determinations of state appellate courts).

2003)("Though the Supreme Court has not yet interpreted the 'unreasonable determination' clause of § 2254(d)(2), based upon the reasoning in <u>Williams</u>, it appears that a court may grant the writ if the state court's decision is based on an objectively unreasonable determination of the facts in light of the evidence presented during the state court proceeding.")(citing <u>Torres v. Prunty</u>, 223 F.3d 1103, 1107-08 (9th Cir. 2000)).

V.   <u>ANALYSIS OF PETITIONER'S CLAIMS</u>

A.   <u>Issue 1: Sufficiency of the Evidence</u>

In the appeal of her conviction, Longmire contended that the evidence was insufficient to prove beyond a reasonable doubt that she acted with premeditation under the standard enunciated in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979).  The Tennessee Court of Criminal Appeals rejected this claim on the merits:

> Defendant argues that the evidence is insufficient to convict her because, mentally, she was unable to develop premeditation. First degree murder is defined as a "premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1) (1997). The statute further defines "premeditation" as "an act done after the exercise of reflection and judgment" and provides that,
>
> > 'Premeditation' means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.
>
> Tenn. Code Ann. § 39-13-202(d) (1997). Defendant contends that because she was suffering from a major depressive

disorder at the time of the homicide, her mind was so affected that she was incapable of exercising sufficient reflection and judgment to establish premeditation prior to killing the victim. Granted, a defendant may not be convicted of first degree premeditated murder if, as the result of a mental disease or defect, he or she lacked the capacity to form premeditation. . . . However, the great weight of evidence in this case leads to a conclusion contrary to Defendant's assertions.

While there was significant expert testimony that Defendant was suffering from a major depressive disorder at the time she killed the victim, and that this "mental disease" affected her ability to function with regard to judgment and other cognitive skills, this does not require a finding that Defendant lacked the capacity to premeditate. Indeed, the defense expert testified that Defendant was able to appreciate the nature and wrongfulness of her behavior which implies that she also had the ability to engage in some form of judgment and reflection prior to killing the victim. This is especially true in light of the time and effort Defendant used to complete the crime. Examining the evidence in the light most favorable to the State, a rational trier of fact could determine beyond a reasonable doubt that Defendant acted with premeditation.

Although we conclude that Defendant was not laboring under a state of diminished capacity at the time she committed the crime, we must still determine whether the State put on sufficient proof to establish that Defendant did, in fact, kill the victim intentionally and with premeditation. We hold that it did. Defendant prepared for killing the victim. First, she stole a .38 caliber pistol from her cousin and carried the weapon in her pocket as she followed through with her plan to confront the victim. Secondly, Defendant laid in wait for the victim. She sat in her car, angry and upset, for at least five minutes before the victim arrived. Lastly, and most damaging to Defendant's argument, Defendant not only shot the victim multiple times, but when Defendant discovered as she was departing that the victim was still alive, she walked back to where the victim lay on the ground and repeatedly shot her again.

Whether a defendant has acted with premeditation is a question for the finder of fact to determine, and it may be inferred from the manner and circumstances of the killing. . . . The following factors may be considered in

> deciding whether the murder was premeditated: (1) the
> procurement and use of a deadly weapon upon an unarmed
> victim, (2) the defendant's declarations of her intent to
> kill, (3) the infliction of multiple wounds, (4)
> defendant's calmness immediately after the killing, and
> (5) a particularly cruel killing. . . . We find that the
> circumstances in the instant case support the majority of
> the factors above. Viewing the evidence in a light most
> favorable to the State, the proof was sufficient for a
> rational trier of fact to have found beyond a reasonable
> doubt that Defendant killed the victim intentionally and
> with premeditation.

State v. Longmire, 2001 WL 128561 at *4-5.

The Court of Criminal Appeals decision is not an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). The state court relied on the relevant Supreme Court precedent, Jackson v. Virginia, following the Supreme Court's standard a petitioner must satisfy in order to prevail on a sufficiency of the evidence claim:

> We hold that in a challenge to a state criminal
> conviction brought under 28 U.S.C. § 2254—-if the settled
> procedural prerequisites for such a claim have otherwise
> been satisfied—-the applicant is entitled to habeas
> corpus relief if it is found that upon the record
> evidence adduced at the trial no rational trier of fact
> could have found proof of guilt beyond a reasonable
> doubt.

Jackson, 443 U.S. at 324. In making this assessment, the evidence presented at trial must be viewed in the light most favorable to the prosecution. Id. at 319.[8] The Supreme Court's opinion also makes clear that the prosecution in a criminal trial is not "under an affirmative duty to rule out every hypothesis except that of

---

[8] The Supreme Court emphasized that a habeas court is not to substitute its own views for that of the jury. Jackson at 318-19.

guilt beyond a reasonable doubt." <u>Id.</u> at 326; <u>see also</u> <u>Holland v.</u>
<u>United States</u>, 348 U.S. 121, 137-41 (1955).  The Court of Criminal
Appeals applied that clearly established precedent correctly and in
an objectively reasonable manner.

As was set forth at length in the opinion of the Tennessee
Supreme Court, there is no question that, viewed in the light most
favorable to the prosecution, a rational juror could find Longmire
guilty of first degree murder.  The evidence is more than
sufficient to permit the jury to reject Longmire's assertions that
she lacked the capacity to form premeditation.

Moreover, even if a possibility existed that this petitioner
could clear the hurdle erected by § 2254(d), this Court is still
bound by the state court's factual determinations, and those
findings lead to the conclusion that the jury verdict complied with
<u>Jackson</u>.  Claim 1 is without merit and is DENIED.

B.    <u>Issue 2: Ineffective Assistance of Counsel</u>

<u>Applicable Legal Standards</u>

A claim that ineffective assistance of counsel has deprived a
defendant of her Sixth Amendment right to counsel is controlled by
the standards enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668,
687 (1984):

> A convicted defendant's claim that counsel's
> assistance was so defective as to require reversal of a
> conviction or death sentence has two components.  First,
> the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made
> errors so serious that counsel was not functioning as the
> "counsel" guaranteed the defendant by the Sixth

Amendment.  Second, the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

To demonstrate deficient performance by counsel, a defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness."  Id. at 688.

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citation omitted); see also Coe v. Bell, 161 F.3d 320, 342 (6th Cir. 1999)("The specifics of what Coe claims an effective lawyer would have done for him are too voluminous to detail here. They also largely miss the point: just as (or more) important as what the lawyer missed is what he did not miss.  That is, we focus on the adequacy or inadequacy of counsel's actual performance, not counsel's (hindsight) potential for improvement."); Adams v. Jago, 703 F.2d 978, 981 (6th Cir. 1983)("a defendant 'has not been denied

effective assistance by erroneous tactical decisions if, at the time, the decisions would have seemed reasonable to the competent trial attorney'")(citations omitted).

A prisoner attacking his conviction bears the burden of establishing that he suffered some prejudice from his attorney's ineffectiveness. <u>Lewis v. Alexander</u>, 11 F.3d 1349, 1352 (6th Cir. 1993); <u>Isabel v. United States</u>, 980 F.2d 60, 64 (1st Cir. 1992). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." <u>Strickland</u>, 466 U.S. at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. <u>Id.</u> at 697.

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> In analyzing prejudice,

> the right to the effective assistance of counsel is
> recognized not for its own sake, but because of the
> effect it has on the ability of the accused to receive a
> fair trial. Absent some effect of the challenged conduct
> on the reliability of the trial process, the Sixth
> Amendment guarantee is generally not implicated.

<u>Lockhart v. Fretwell</u>, 506 U.S. 364, 368 (1993)(citing <u>United States v. Cronic</u>, 466 U.S. 648, 658 (1984)); <u>see also</u> <u>Strickland</u>, 466 U.S. at 686 ("The benchmark for judging any claim of ineffectiveness

must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."). "Thus analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." <u>Lockhart</u>, 506 U.S. at 369.

<u>Application</u>

Longmire alleges that counsel was ineffective by failing to adequately investigate the case, failing to bring up "some very critical issues" at trial, and failing to call witnesses on her behalf. She also claims that counsel only met with her approximately six times before trial, failed to fight State witnesses, failed to move for further psychiatric evaluation, and failed to inform her of her right not to talk with psychiatric professionals about her crime. Respondent contends that the Tennessee Court of Criminal Appeals relied on <u>Strickland</u>, the relevant Supreme Court precedent for analyzing claims of ineffective assistance, accurately summarized the proof on each issue, and made a reasonable determination of the facts that is entitled to a presumption of correctness.

The Tennessee Court of Criminal Appeals reviewed the evidence presented at the evidentiary hearing under that standard enunciated in <u>Strickland</u> and found:

> The Defendant testified on her own behalf at the postconviction hearing; she called no other witnesses. She stated that the first time she met with her lawyer,

Mr. Michael Johnson, he told her that she was facing a sentence of twenty-five years to life, prior to his even discussing the facts of the case with her. She felt that this was a form of "scare tactics" on her lawyer's part. She gave him the name of one witness, her girlfriend in New Orleans. This woman did not appear at trial. Ms. Longmire testified that this woman would have been able to testify about Ms. Longmire's state of mind immediately prior to the killing. Ms. Longmire remembered meeting with the psychologist while she was in jail. Ms. Longmire testified that her lawyers should have pursued a theory of self-defense because the victim slapped her before Ms. Longmire shot her.

Ms. Garland Erguden, one of the Defendant's lawyers, testified on behalf of the State. She explained that neither she nor Mr. Johnson had previously presented a "diminished capacity" defense, and so they both researched the issue and both discussed the theory with the psychologist. She testified that the psychologist gave them several textbooks and met with them several times "to make sure [they] understood, thoroughly, how to handle one of these diminished-capacity defenses and what to anticipate, in the way of response, from the attorney general's office." Ms. Erguden also assisted Mr. Johnson in meeting and conferring with Ms. Longmire.

Ms. Erguden testified that, given the State's proof and Ms. Longmire's history of mental health problems, she and Mr. Johnson determined that they had a strong diminished capacity defense, and that it was the "only reasonable defense" in light of the State's eyewitness proof of the circumstances of the shooting. They called two expert witnesses on the Defendant's behalf. They obtained jury instructions on diminished capacity. They also subpoenaed the Defendant's friend in New Orleans, but the woman failed to appear at trial. This witness had previously demonstrated a reluctance to testify on behalf of the Defendant and, given the strength of the expert testimony, Ms. Erguden and Mr. Johnson determined that trying to force her to testify would not be beneficial to the Defendant's case. Prior to trial, they had also spoken to the Defendant's husband and teenage son, but determined that neither of those persons would be helpful to the Defendant's case.

Mr. Michael Johnson also testified, and stated flatly that he did not tell the Defendant at their initial meeting that she was facing a sentence of twenty-five

years to life in prison. Mr. Johnson also echoed Ms. Erguden's testimony about the missing witness: that she was not crucial and her absence from the trial did not have a pivotal effect on the Defendant's case. Mr. Johnson described his initial meeting with the Defendant and stated that he "had her evaluated almost immediately." He determined that their only defense was diminished capacity, that self-defense would not work. He felt that their proof of diminished capacity was very strong.

Mr. Johnson testified that the Defendant was "an excellent client." He believed that the jury's verdict was "an unjust result." He stated, "I really wanted to win this case for my client. . . . I guess I'm bothered by it most because there's nothing I would have done differently."

The trial court ruled that "the assistance provided by Mr. Johnson and Ms. Erguden was outstanding in every regard. They rendered thorough, conscientious, and professional representation to the defendant in this case." Accordingly, the trial court dismissed the Defendant's petition for post-conviction relief.

(Respondent's Addendum 10, pp. 3-4).

The Tennessee Court of Criminal Appeals determined that the performance of Longmire's trial counsel was not deficient. Its decision is not an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). The "contrary to" clause is inapplicable because the state court relied on the relevant Supreme Court precedent, <u>Strickland v. Washington</u>. The Court of Criminal Appeals applied that clearly established precedent correctly and in an objectively reasonable manner. The court's determination made after applying that precedent to the facts, that Petitioner failed to meet her burden of establishing the allegations of her petition by clear and convincing evidence, is not an "unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's factual findings are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1).

Longmire does not present any facts which rebut the presumption that the state court's factual findings are correct. Petitioner relies on her own testimony at the post-conviction hearing and the argument presented to the Court of Criminal Appeals. Longmire does not provide any evidence, let alone clear and convincing evidence, that would tend to refute the presumption of correctness. Petitioner's claims of ineffective assistance by trial counsel are unsupported by facts rebutting the state court's factual determinations and application of Supreme Court precedent, and thus, are without merit.

As Petitioner's claims are devoid of substantive merit, disposition of this petition without an evidentiary hearing is proper. Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts. The Respondent's motion to dismiss is GRANTED and this petition is DISMISSED.

VI. <u>Appellate Issues</u>

The Court must also determine whether to issue a certificate of appealability ("COA"). Twenty-eight U.S.C. § 2253(a) requires a district court to evaluate the appealability of its decision dismissing a § 2254 habeas petition and to issue a certificate of

appealability ("COA") only if "the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2); <u>see also</u> Fed. R. App. P. 22(b); <u>Lyons v. Ohio Adult Parole Auth.</u>, 105 F.3d 1063, 1073 (6th Cir. 1997)(district judges may issue certificates of appealability).   No § 2254 petitioner may appeal without this certificate.

In <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'"   <u>Slack</u>, 529 U.S. at 484 (quoting <u>Barefoot</u>, 463 U.S. at 893 & n.4).

The Supreme Court has cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in <u>Slack</u> held that a COA does not require a showing that the appeal will succeed.   Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not demonstrate an entitlement to relief.   The holding in <u>Slack</u> would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail.   It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief.   After all, when a COA is sought, the whole premise is that the prisoner "'has already failed in that endeavor.'"

<u>Miller-El v. Cockrell</u>, 537 U.S. 322, 337 (2003) (quoting <u>Barefoot</u>, 463 U.S. at 893).   Thus,

[a] prisoner seeking a COA must prove "'something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. . . . We do not require petitioners to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

Id. at 338 (quoting Barefoot, 463 U.S. at 893); see also id. at 342 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA; "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[9]

In this case, the issues presented by Petitioner's petition are either procedurally defaulted or without merit for the reasons previously stated. Because she cannot present a question of some substance about which reasonable jurists could differ, the Court DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2254 petitions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal in forma pauperis in a § 2254 case, and thereby avoid the $455 appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, Petitioner must seek permission from the district court under Federal Rule of Appellate

---

[9]    The Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." Id. at 337. Instead, the COA requirement implements a system of "differential treatment of those appeals deserving of attention from those that plainly do not." Id.

Procedure 24(a). <u>Kincade</u>, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal <u>in forma pauperis</u>, Petitioner must file her motion to proceed <u>in forma pauperis</u> in the appellate court. <u>See</u> Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal <u>in forma pauperis</u> is DENIED. If Petitioner files a notice of appeal, she must also pay the full $455 appellate filing fee or file a motion to proceed <u>in forma pauperis</u> and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

IT IS SO ORDERED this 6th day of March, 2008

<u>s/ J. DANIEL BREEN</u>
UNITED STATES DISTRICT JUDGE
